*In re* RICHARD W. MARKUS.

*Número:* AB-2001-1          *Resuelto:* 6 de marzo de 2003

*Roberto J. Sánchez Ramos, procurador general*, querellante; *José M. Guerrero Preston*, abogado del querellado.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Tribunal de Circuito de Apelaciones, mediante *sentencia mayoritaria* emitida el 20 de octubre de 2000, *revocó* una resolución del Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual el foro primario le había ordenado al Sr. Rubén Vélez Lebrón que produjera, y entregara, ciertos documentos que dos comisiones de la Cámara de Representantes de Puerto Rico le habían solicitado.[1]

Insatisfecha con la referida sentencia, la Cámara de Representantes, por conducto de su entonces representante legal, el Lcdo. Richard W. Markus, presentó una moción de reconsideración en cuanto a la sentencia emitida. El foro apelativo intermedio, *esta vez de forma unánime*, resolvió denegar la moción de reconsideración por falta de jurisdicción *y referir el asunto a este Tribunal* por considerar que "el lenguaje utilizado por el Lcdo. Markus [en la referida moción de reconsideración] e[ra] impropio, irrespetuoso y ofensivo a la dignidad de [ese] Tribunal".[2]

Referimos el asunto a la Oficina del Procurador General para la correspondiente investigación, informe y recomen-

---

[1] Caso Civil Núm. KJV00–00967.

[2] Ello en vista del hecho de que "el Tribunal de Circuito de Apelaciones no tiene facultades disciplinarias sobre la conducta de los abogados [y de que] dicha función corresponde exclusiva e inherentemente al Tribunal Supremo de Puerto Rico ...".

dación. El Procurador General rindió su informe. En él expresa, en lo pertinente, que entiende que las expresiones vertidas por el Lcdo. Richard W. Markus, en la moción de reconsideración en controversia, constituyen una violación a las disposiciones del Canon 9 del Código de Ética Profesional.[3]

Le concedimos un término al licenciado Markus "para exponer su posición sobre el Informe del Procurador General". En su comparecencia éste aduce que, por los fundamentos que expresa y somete ante nuestra consideración, entiende que no violó el citado Canon 9 del Código de Ética Profesional, razón por la cual solicita el archivo de la querella. *Discrepamos*. Veamos por qué.

## I

Una *somera lectura* de la moción de reconsideración presentada por el licenciado Markus ante el Tribunal de Circuito de Apelaciones es todo lo que se necesita para comprender y avalar la acción tomada por el tribunal apelativo intermedio. Esto es, ciertamente explica que los distinguidos Jueces que componían el panel de dicho foro hayan referido ante este Tribunal la mencionada moción de reconsideración. *La moción, no hay duda, es altamente irrespetuosa, impropia y ofensiva a la dignidad de ese foro judicial.*

El citado Canon 9 del Código de Ética Profesional establece:

> El abogado debe observar para con los Tribunales una conducta *que se caracterice por el mayor respeto.* Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados el abogado debe interve-

---

[3] 4 L.P.R.A. Ap. IX.

nir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

El deber de respeto propio para con los Tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa. (Énfasis suplido.)

Dicho canon, ciertamente, *no* le impone al abogado, en relación con sus expresiones y escritos, una mordaza previa. Éste tiene el derecho de hacer todos los planteamientos que entienda necesarios en defensa de los intereses de su cliente. Por otro lado, debe quedar claro que consideramos que la crítica constructiva a la labor judicial siempre es bienvenida y necesaria por cuanto quizás constituye la "medicina" más eficaz y necesaria para mejorar la labor judicial que realizamos.

Ello no obstante, esas expresiones, escritos y críticas deben ser realizadas de manera correcta y respetuosa por parte de los abogados. Éstos nunca deben olvidar que tienen la obligación de mantener y promover la imagen de la justicia. *Coll Moya v. Alcaide, Cárcel Municipal*, 89 D.P.R. 225, 238 (1963). El abogado no cumple con esa obligación mediante la crítica injustificada y viciosa de las decisiones emitidas por los magistrados de este país. Como expresáramos en *In re Cardona Álvarez*, 116 D.P.R. 895, 906 (1986), el "abogado no tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces".

Los abogados deben mantener presente que

[l]a práctica de la abogacía exige hacia los tribunales constante respeto. ... Para reclamar derechos y solventar controversias no es menester lastimar la dignidad personal ni institucional de los miembros de la judicatura, como de ninguna otra persona. (Énfasis suprimido.) *In re Pagán*, 116 D.P.R. 107, 111 (1985).

# II

De una lectura general de la moción de reconsideración, aquí en controversia, presentada por el Lcdo. Richard W. Markus *emana una actitud de irrespetuosidad hacia el Tribunal de Circuito de Apelaciones que, realmente, resulta impresionante y alarmante.* Por otro lado, una lectura un poco más detallada demuestra unas frases particulares, *sumamente hirientes y ofensivas*, que, naturalmente, lastiman la dignidad de los integrantes de ese foro apelativo intermedio.

Meramente, a manera de ejemplo, encontramos frases tales como: "[l]a mayoría de dos jueces que dictó la sentencia en este caso reseña que lo resolvió en seis (6) días laborables. Sin ánimo de sonar irrespetuoso, *el resultado así lo refleja*" (énfasis suplido);[4] "[e]s una *sentencia leguleya*" (énfasis suplido);[5] "[q]ue la opinión de la mayoría demuestra un grave desconocimiento de los hechos del caso era de esperar. Después de todo, este tribunal apelativo ha pretendido fungir como tribunal de instancia, *pero sin pasar el trabajo de cumplir con el procedimiento y celebrar un juicio*" (énfasis suplido.);[6] "[t]an grave como el desconocimiento de los hechos es el *profundo desentendimiento* de los procesos parlamentarios y de las normas legales y constitucionales que aplican en la Rama Legislativa" (énfasis suplido);[7] "[l]o aseverado [por la mayoría del tribunal apelativo] *constituye una aberración jurídica*" (énfasis suplido);[8] "[e]sto abona sobre el problema de adjudicar a destiempo. Si no se han afinado las controversias mediante el proceso adversativo, lo único que puede hacer un tribunal, especialmente a nivel apelativo, *es 'dar palos a cie-*

---

[4] Véase la Moción de reconsideración, pág. 1.

[5] Íd.

[6] Íd.

[7] Íd., pág. 2.

[8] Íd., pág. 3.

*gas'* " (énfasis suplido);(⁹) "[p]rocesos como el que nos ocupa, que tienen siglos de evolución, *no pueden ser atendidos como si fueran un cobro de Regla 60 o un divorcio por trato cruel*" (énfasis suplido);(¹⁰) "[u]no de los *aspectos más leguleyos de la opinión de la mayoría,* es el que se refiere a los términos para completar investigaciones legislativas" (énfasis suplido);(¹¹) "[c]omo ocurre con el resto de la sentencia, *tales opiniones no aparecen sostenidas por autoridad alguna*" (énfasis suplido);(¹²) "[a] continuación *algunas de las conclusiones absurdas* a las que llega la mayoría de este panel" (énfasis suplido);(¹³) "*[l]a óptica de la sentencia,* como la del peticionario, es la de una Regla 4 de Procedimiento Civil *en su manifestación más retrógrada*" (énfasis suplido);(¹⁴) "[c]omo ocurre a través de toda la sentencia, *el tribunal adjudica como cierto el disparate alegado por el peticionario*" (énfasis suplido);(¹⁵) "[e]n este caso la sentencia del tribunal ha ignorado por completo las reglas de la Cámara de Representantes de Puerto Rico y las normas de Derecho Parlamentario. Las ha ignorado como si no existieran *y su ignorancia ha sido upina por lo menos por dos razones*" (énfasis suplido);(¹⁶) "[s]e impone que este Tribunal, *con la misma prontitud con la que paralizó los procedimientos,* reconsidere su sentencia del 20 de octubre de 2000, la revoque por completo y disponga lo necesario para agilizar la expedi[c]ión de la orden de citación al Sr. Rubén Vélez, *todo ello en compensación por la demora que ha* ocasionado con dicha sentencia *y en reparación parcial al daño que le ha ocasionado* a las prerrogativas constitucio-

---

(⁹) Íd., pág. 7.
(¹⁰) Íd.
(¹¹) Íd., pág. 8.
(¹²) Íd.
(¹³) Íd., pág. 12.
(¹⁴) Íd., pág. 13.
(¹⁵) Íd., pág. 14.
(¹⁶) Íd., pág. 16.

nales de la Cámara de Representantes de Puerto Rico". (Énfasis suplido.)([17])

## III

Lo anteriormente reseñado constituye *prueba clara y contundente* de la violación a las disposiciones del Canon 9 del Código de Ética Profesional, *supra*, por parte del Lcdo. Richard W. Markus.([18]) La profesión debe quedar apercibida de que *no* estamos en disposición de tolerar esa clase de conducta. Ningún abogado de este País, repetimos, posee licencia para poner en entredicho, o mancillar, la dignidad de los jueces. *In re Cardona Álvarez*, ante.

## IV

Por los fundamentos antes expresados, procede que *censuremos severamente* al Lcdo. Richard W. Markus por la conducta observada por éste ante el Tribunal de Circuito de Apelaciones, *la cual merece nuestro repudio más enérgico*. Le apercibimos que el Tribunal no ha sido más severo en la imposición de la sanción disciplinaria por razón de su historial como abogado.

*Se dictará Sentencia de conformidad.*

El Juez Asociado Señor Rivera Pérez no interviene.

---

([17]) Íd., pág. 20.

([18]) A esos efectos, basta con señalar la definición del término "leguleyo", el cual es utilizado por el licenciado. Markus en dos ocasiones en el escrito que presentara. Conforme surge del *Diccionario Enciclopédico de Derecho Usual*, este término ha sido definido como: "[e]l que se tiene por legalista y sólo de memoria sabe las leyes." G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20va ed., Buenos Aires, Ed. Heliasta, 1981, T. V, pág. 125. Por su parte, Joaquín Escriche lo define como:

"El que sin perpetrar en el fondo del derecho sabe s[ó]lo enredar y eternizar los pleitos con las sutilezas de las fórmulas. Es entre los jurisconsultos lo mismo que son los charlatanes entre los médicos .... Francisco Poleti, en su historia del foro romano, llama á los leguleyos charlatanes, harpías, sanguijuelas del género humano, y maulas consumados que meten á sus clientes en laberintos de pleitos que nunca se acaban." D.J. Escriche, *Diccionario Razonado de Legislación y Jurisprudencia*, Madrid, Ed. Bailly-Bailliere, 1875, T. III, pág. 876.